Meenoo Chahbazi (AZ Bar No. 029568)
Chahbazi Law PLLC
4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 282-5870
mc@employeelawoffice.com

Attorney for Plaintiff Mary Campbell

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Campbell, an individual,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>Denis McDonough, Secretary of Veterans Affairs, U.S. Department of Veterans Affairs,<br><br>　　　　　　　Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**(Title VII; ADEA)**<br><br>**(Jury Trial Demanded)** |

　　　Plaintiff Mary Campbell, by and through her counsel, alleges as follows:

　　　1.　　This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., as amended ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., 29 U. S. C.§633a (ADEA).

**PARTIES**

　　　2.　　Plaintiff Mary Campbell is an African American female, who is 61 years old, and a resident of Maricopa County, Arizona.  She is also a veteran who was honorably discharged and received a Meritorious Service Medal.

　　　3.　　Defendant Denis McDonough is the Secretary of the U.S. Department of Veterans Affairs ("VA"), and was selected by presidential appointment to lead the VA.

　　　4.　　VA is one of the largest integrated health care systems in the United States and the second largest federal department after the Department of Defense.

5.     VA has approximately 167 medical centers and more than 1,400 community-based outpatient clinics.

## JURISDICTION

6.     The Court has jurisdiction over this case pursuant to 29 U.S.C. § 2617(a)(2) and 28 U.S.C. §§ 1331, 1332 and 1367.

7.     Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

8.     Ms. Campbell has provided over 18 years of service to the federal government through her service to the military and as a government employee.

9.     Ms. Campbell began her employment with VA in 2014.

10.    In 2018, Ms. Campbell moved from Illinois to Arizona to accept a position as a GS-11, Administrative Officer, and a supervisor to program support assistants (PSA). She began working in this position at the Phoenix VA Medical Center (VAMC) in approximately November 2018.

11.    Since approximately November 2018, Ms. Lisa Wayman, the Chief of Nursing Education at the VAMC (Chief Wayman), subjected Ms. Campbell to harassment based on her race, age, and as reprisal for her protected activity, culminating in harming Ms. Campbell's reputation, denigrating her to management, and causing management to further deny Ms. Campbell support, and demote Ms. Campbell from a GS-11 to a GS-9.

12.    Five or more VA employees have reported discrimination by Chief Wayman to VA, including discrimination based on race and age.

13.    Thirteen or more VA employees have reported Chief Wayman's harassing conduct to VA. The employees who have made these reports against Chief Wayman include nonwhite and/or older employees who have been subjected to harassment and/or reprisal by Chief Wayman, as well as VA employees who have witnessed Chief Wayman's harassment of nonwhite employees.

14.    Chief Wayman has subjected multiple non-white and older employees to

hostile conduct and discriminatory comments. For example, Chief Wayman has engaged in the following conduct:

    a. Chief Wayman said to another non-white employee "Nobody likes you" and repeatedly told her "Nobody understands you [when you speak]."

    b. Chief Wayman slammed the door on another black VA employee after accosting him and telling him that he did not look busy, stereotyping him as lazy. The black employee reported to VA that he "did not feel it to be safe" to work with Chief Wayman in the Nursing Education department. One witness stated that Chief Wayman "repeatedly clenched her fists" when confronting this black employee.

    c. Chief Wayman yelled at and berated a number of other nonwhite employees. A VA employee who filed a complaint after witnessing Chief Wayman berate another nonwhite employee stated that she "felt terrible" for the nonwhite employee, "it was hard to watch" and she was "stunned to find out" that the person engaging in the offensive conduct "was the Chief of Education."

    d. Another nonwhite employee reported in a complaint to management regarding Ms. Wayman: "I feel like I am being targeted . . . I have worked in this facility for 26 years and I would like to think that I have a good reputation as one of the hardest working nurse[s] who put a lot of effort in taking care of our Veterans."

    e. Chief Wayman asked two older employees that reported to her, who were 55 or older, when they were "going to retire." Chief Wayman wrote in a memo to upper management that she wanted to "get rid of" their positions, as well as the positions of two other older employees.

    f. Chief Wayman told another older VA employee that she was giving some of the older employee's assignments to a younger VA employee

because "he was younger" and had better ideas, despite the fact that the younger employee was much less experienced and was being trained by the older VA employee.

15. VA has acknowledged that Chief Wayman has engaged in a continued pattern of intimidation and inappropriate conduct toward multiple staff.

16. However, notwithstanding numerous complaints and VA's acknowledgement of Chief Wayman's repeated pattern of intimidating and inappropriate conduct, after receiving 13 complaints regarding Ms. Wayman from 2016-2019, VA maintained Chief Wayman in her role as Chief of Nursing Education at the Phoenix VA until at least July, 2021.

17. Chief Wayman repeatedly engaged in discriminatory harassment and reprisal against Ms. Campbell based on her race, black, her age, (59 at the time, currently 61), and her EEO activity including but not limited to the following examples.

18. Since approximately November 2018, Chief Wayman opposed Ms. Campbell's leadership and supervisory role.  For example, Chief Wayman unfairly criticized and tried to undermine Ms. Campbell's plans and proposals.  Chief Wayman opposed Ms. Campbell's management and supervision of a white PSA and interfered with Ms. Campbell's ability to work with the white PSA as part of a team.  Chief Wayman turned the white PSA against Ms. Campell and rewarded the white PSA for siding with her, Chief Wayman, by taking away some of his duties and allowing him to work from home.

19. Chief Wayman harassed Ms. Campbell based on the assignment of space for Ms. Campbell's department and wanted Ms. Campbell to give up space assignment for her department.  Chief Wayman alleged Ms. Campbell did not have authority with respect to room assignments and implied that Ms. Campbell was not part of leadership.

20. On or about March 21, 2019, Chief Wayman harassed Ms. Campbell about preferring Ms. Campbell's office over her (Chief Wayman's) own work office.

- 4 -

21. Chief Wayman screamed and yelled at Ms. Campbell saying that Ms. Campbell's office was nicer, implying that Ms. Campbell did not deserve her office.

22. Chief Wayman repeatedly and easily became enraged and reacted in a hostile manner toward Ms. Campbell.

23. On or about March 29, 2019, when Ms. Campbell was trying to assist Chief Wayman to find a new office for her department, Chief Wayman threatened to report Ms. Campbell to then Associate Director Patient Care Services/Nurse Executive.

24. Chief Wayman repeatedly made false and disparaging accusations regarding Ms. Campbell in complaints to management.

25. Chief Wayman, through her discriminatory intent against Ms. Campbell, caused Leslie Lockridge, Deputy Nurse Executive (Deputy Lockridge) and other VA management to engage in adverse conduct toward Ms. Campbell and reinforced Deputy Lockridge's discriminatory and retaliatory stereotypes of Ms. Campbell. *See eg., Day v. UPS*, 829 F. Supp. 2d 969, 975-77 (D. Or. 2011)(citing *Staub v. Proctor Hospital*, 131 S. Ct. 1186, 1190-94, 179 L. Ed. 2d 144 (2011) (analyzing cat's paw theory).

26. Ms. Lockridge was absent for approximately five months. When she returned from her absence, she relied on Lisa Wayman's input regarding Ms. Campbell, and began to try to build a case against Ms. Campbell. She blamed Ms. Campbell for the lack of training that she (Ms. Campbell) had received and further isolated and denied Ms. Campbell training.

27. On May 17, 2019, Leslie Lockridge, Deputy Nurse Executive placed Ms. Campbell on probation, based on a complaint made by Chief Wayman, although Ms. Campbell was not informed of a probationary period when she began the position in November 2018.

28. On May 28, 2019, Deputy Lockridge gave Ms. Campbell a Letter of Expectations based on Chief Wayman's complaints, despite the fact that two witnesses corroborated that Chief Wayman was engaging in harassing conduct during the

incidents at issue, and despite the fact that at that time 10 or more employees had complained about Chief Wayman's hostility (currently 13 or more employees have complained).

29. From May-August 2019, Deputy Lockridge denied Ms. Campbell the support that she needed and isolated Ms. Campbell.

30. From May-August 2019, Deputy Lockridge did not acknowledge the impact on Ms. Campbell given that she (Deputy Lockridge) was not present during the previous months and blamed Ms. Campbell for Deputy Lockridge and management's failure to provide Ms. Campbell with sufficient orientation and training.

31. From May-August 2019, Deputy Lockridge focused on building a case against Ms. Campbell to force Ms. Campbell out of her position.

32. On multiple dates, Deputy Lockridge denied Ms. Campbell recognition for positive contributions, accomplishments and scrutinized Ms. Campbell.

33. On multiple dates, management did not provide Ms. Campbell with orientation and training. For example, Leslie Lockridge never sat down with Ms. Campbell to review previous budget spending, or contractual decisions, future budget spending projections, line items of interest, future contract expenses and additional needed information that would set her up to be successful managing the budget for nursing. This information could not be gained or shared by mentor (AOs) outside of nursing service, and Ms. Campbell needed this information from Leslie Lockridge, given that the previous person that controlled the budget had been gone for two years.

34. In approximately May 2019, Deputy Lockridge failed to approve Ms. Campbell for Contracting Officer's Representative (COR) Training, then Deputy Lockridge blamed Ms. Campbell in September 2019 and other dates for not taking COR Training. Despite the fact that Ms. Campbell sent the notification to Leslie Lockridge and sent a reminder to Ms. Lockridge, Ms. Lockridge denied approval and then blamed Ms. Campbell for not attending COR training.

35. On August 8, 2019 and other dates, Ms. Campbell reported race and age

discrimination by Chief Wayman and VA management to VAMC's EEO Program Manager and VA Management.

36. On multiple dates including September 4, 2019, Chief Wayman filed or made complaints against Ms. Campbell and made false and retaliatory accusations against Ms. Campbell.

37. On September 4, 2019, Deputy Lockridge indicated that she was falsely blaming (scapegoating) Ms. Campbell for Chief Wayman's hostile conduct. Deputy Lockridge stated that Chief Wayman's complaints against Ms. Campbell were a direct response to another black employee's EEO complaint against Chief Wayman.

38. In approximately October 2019, Deputy Lockridge asked Ms. Campbell to sign a blank "Summary Rating."

39. On November 7, 2019, after Deputy Lockridge had spoken to the EEO Counselor, Ms. Campbell received notice that Deputy Lockridge had given her a Special Rating of "Unacceptable" and wrote that Ms. Campbell "Refused to Sign 10/11/19"; however, Ms. Campbell had not previously received the completed documentation.

40. VA management additionally engaged in the following discrete and independently actionable conduct toward Ms. Campbell.

41. Chief Wayman and Deputy Lockridge's discriminatory and retaliatory conduct toward Ms. Campbell culminated in Ms. Campbell's demotion.

42. On September 4, 2019, VA management issued Ms. Campbell a memorandum entitled "Failure to Satisfactorily Complete Supervisory Probationary Period" and demoted her from a GS-11 to a GS-9 Administrative Officer, which resulted in a salary decrease.

43. On September 29, 2019, VA management reassigned Ms. Campbell to the Community Living Center (CLC) permanently.

44. On or about November 7, 2019, Deputy Lockridge gave Ms. Campbell a Special Rating of "Unacceptable."

45. After her demotion, Ms. Campbell was replaced by a white, younger employee who took over her Administrative Officer position.

## ADMINISTRATIVE EXHAUSTION

46. Ms. Campbell filed her EEO Complaint with the Agency on November 14, 2019 and received a final agency decision on June 11, 2021.

## CLAIM ONE

### (Harassment Based on Race in Violation of Title VII)

47. Plaintiff incorporates all previous allegations as though set forth fully herein.

48. Plaintiff was subjected to race discrimination and harassment by VA based on her race, black.

49. Plaintiff was harassed and discriminated against based on her race by Chief Lisa Wayman who subjected her to intimidation and harassing conduct, made false accusations against her, blamed her for matters outside of her control, denigrated her to other VA staff and management, and used her power and influence to turn staff and management against Ms. Campbell.

50. VA Management, including Leslie Lockridge, relied on Ms. Wayman's input, and discriminated against and harassed Ms. Campbell, including isolating Ms. Campbell, denying her support, resources, and training, blaming her for matters that were outside of her (Ms. Campbell's) control, and building a case against her.

51. VA Management, including Leslie Lockridge, relied on Ms. Wayman's input, and discriminated against and harassed Ms. Campbell, with respect to the terms and conditions of her employment.

52. Defendant, VA, gave Ms. Campbell lower performance evaluations than she deserved, subjected her to a demotion, and replaced her with a white employee.

53. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost income, lost fringe benefits, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life,

and other lost monetary and non-monetary benefits due to her.

## CLAIM TWO

### (Retaliatory Harassment under Title VII)

54. Plaintiff incorporates all previous allegations as though set forth fully herein.

55. Defendant retaliated against Plaintiff and subjected her to retaliatory harassment in violation of Title VII because she engaged in protected activity and reported discrimination based on race.

56. Plaintiff was harassed and retaliated against based on her protected EEO activity by Chief Lisa Wayman who subjected her to intimidation and harassing conduct, made false accusations against her, blamed her for matters outside of her control, denigrated her to other VA staff and management, and used her power and influence to turn staff and management against Ms. Campbell.

57. VA Management retaliated against and harassed Ms. Campbell, including isolating Ms. Campbell, denying her support, resources, and training, blaming her for matters that were outside of her (Ms. Campbell's) control, and building a case against her.

58. VA Management, including Leslie Lockridge, retaliated against and harassed Ms. Campbell, with respect to the terms and conditions of her employment.

59. Defendant, VA, gave Ms. Campbell lower performance evaluations than she deserved and subjected her to a demotion based on her protected EEO activity.

60. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost income, lost fringe benefits, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life, and other lost monetary and non-monetary benefits due to her.

## CLAIM THREE

### (Race Discrimination under Title VII)

61. Plaintiff incorporates all previous allegations as though set forth fully herein.

62. Plaintiff was subjected to race discrimination by VA based on her race, black.

63. Plaintiff was harassed and discriminated against based on her race by Chief Lisa Wayman.

64. VA Management, including Leslie Lockridge, relied on Ms. Wayman's discriminatory input, and discriminated against Ms. Campbell based on the terms and conditions of her employment.

65. On September 4, 2019, VA management issued Ms. Campbell a memorandum entitled "Failure to Satisfactorily Complete Supervisory Probationary Period" and demoted her from a GS-11 to a GS-9 Administrative Officer, which resulted in a salary decrease.

66. On September 29, 2019, VA management reassigned Ms. Campbell to the Community Living Center (CLC) permanently.

67. On or about November 7, 2019, Deputy Lockridge gave Ms. Campbell a Special Rating of "Unacceptable."

68. After her demotion, Ms. Campbell was replaced by a white employee who took over her Administrative Officer position.

69. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost income, lost fringe benefits, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life, and other lost monetary and non-monetary benefits due to her.

## CLAIM FOUR

### (Retaliation Under Title VII)

70. Plaintiff incorporates by reference all previous allegations as though set forth fully herein.

71. Defendant retaliated against Plaintiff in violation of Title VII because she engaged in protected activity and reported discrimination based on race.

72. Plaintiff was retaliated against based on her protected EEO activity by Chief Lisa Wayman

73. VA Management, including Leslie Lockridge, retaliated against Ms. Campell based on her protected EEO activity with respect to the terms and conditions of her employment.

74. On September 4, 2019, VA management issued Ms. Campbell a memorandum entitled "Failure to Satisfactorily Complete Supervisory Probationary Period" and demoted her from a GS-11 to a GS-9 Administrative Officer, which resulted in a salary decrease.

75. On September 29, 2019, VA management reassigned Ms. Campbell to the Community Living Center (CLC) permanently.

76. On or about November 7, 2019, Deputy Lockridge gave Ms. Campbell a Special Rating of "Unacceptable."

77. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost income, lost fringe benefits, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life, and other lost monetary and non-monetary benefits due to her.

## CLAIM FIVE

### (Harassment Based on Age in Violation of the ADEA)

78. Plaintiff incorporates all previous allegations as though set forth fully herein.

79. Plaintiff was subjected to age discrimination and harassment by VA

- 11 -

based on her age (then 59, currently 61).

80. Plaintiff was harassed and discriminated against based on her age by Chief Lisa Wayman who subjected her to intimidation and harassing conduct, made false accusations against her, blamed her for matters outside of her control, denigrated her to other VA staff and management, and used her power and influence to turn staff and management against Ms. Campbell.

81. VA Management, including Leslie Lockridge, relied on Ms. Wayman's input, and discriminated against and harassed Ms. Campbell, including isolating Ms. Campbell, denying her support, resources, and training, blaming her for matters that were outside of her (Ms. Campbell's) control, and building a case against her.

82. VA Management, including Leslie Lockridge, relied on Ms. Wayman's input, and discriminated against and harassed Ms. Campbell, with respect to the terms and conditions of her employment.

83. Defendant, VA, gave Ms. Campbell lower performance evaluations than she deserved, subjected her to a demotion, and replaced her with a white employee.

84. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost income, lost fringe benefits, and other lost monetary and non-monetary benefits due to her.

### CLAIM SIX

### (Retaliatory Harassment under the ADEA)

85. Plaintiff incorporates all previous allegations as though set forth fully herein.

86. Defendant retaliated against Plaintiff and subjected her to retaliatory harassment in violation of the ADEA because she engaged in protected activity and reported discrimination based on age.

87. Plaintiff was harassed and retaliated against based on her protected activity by Chief Lisa Wayman who subjected her to intimidation and harassing conduct, made false accusations against her, blamed her for matters outside of her

1 control, denigrated her to other VA staff and management, and used her power and
2 influence to turn staff and management against Ms. Campbell.

3     88.    VA Management retaliated against and harassed Ms. Campbell, including
4 isolating Ms. Campbell, denying her support, resources, and training, blaming her for
5 matters that were outside of her (Ms. Campbell's) control, and building a case against
6 her.

7     89.    VA Management, including Leslie Lockridge, retaliated against and
8 harassed Ms. Campbell, with respect to the terms and conditions of her employment.

9     90.    Defendant, VA, gave Ms. Campbell lower performance evaluations than
10 she deserved and subjected her to a demotion based on her protected EEO activity.

11     91.    As a result of Defendant's conduct, Plaintiff has suffered and continues to
12 suffer lost income, lost fringe benefits, mental anguish, emotional distress, pain and
13 suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life,
14 and other lost monetary and non-monetary benefits due to her.

## CLAIM SEVEN
### (Age Discrimination under ADEA)

17     92.    Plaintiff incorporates all previous allegations as though set forth fully
18 herein.

19     93.    Plaintiff was subjected to age discrimination by VA
20 based on her age (then 59, currently 61).

21     94.    Plaintiff was harassed and discriminated against based on her age by
22 Chief Lisa Wayman.

23     95.    VA Management, including Leslie Lockridge, relied on Ms. Wayman's
24 discriminatory input, and discriminated against Ms. Campbell based on the terms and
25 conditions of her employment.

26     96.    On September 4, 2019, VA management issued Ms. Campbell a

memorandum entitled "Failure to Satisfactorily Complete Supervisory Probationary Period" and demoted her from a GS-11 to a GS-9 Administrative Officer, which resulted in a salary decrease.

97. On September 29, 2019, VA management reassigned Ms. Campbell to the Community Living Center (CLC) permanently.

98. On or about November 7, 2019, Deputy Lockridge gave Ms. Campbell a Special Rating of "Unacceptable."

99. After her demotion, Ms. Campbell was replaced by a younger employee who took over her Administrative Officer position.

100. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost income, lost fringe benefits, and other lost monetary and non-monetary benefits due to her.

## CLAIM EIGHT

### (Retaliation Under ADEA)

101. Plaintiff incorporates by reference all previous allegations as though set forth fully herein.

102. Defendant retaliated against Plaintiff in violation of the ADEA because she engaged in protected activity and reported discrimination based on age.

103. Plaintiff was retaliated against based on her protected activity by Chief Lisa Wayman

104. VA Management, including Leslie Lockridge, retaliated against Ms. Campell based on her protected activity with respect to the terms and conditions of her employment.

105. On September 4, 2019, VA management issued Ms. Campbell a memorandum entitled "Failure to Satisfactorily Complete Supervisory Probationary Period" and demoted her from a GS-11 to a GS-9 Administrative Officer, which resulted in a salary decrease.

106. On September 29, 2019, VA management reassigned Ms. Campbell to

the Community Living Center (CLC) permanently.

107. On or about November 7, 2019, Deputy Lockridge gave Ms. Campbell a Special Rating of "Unacceptable."

108. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost income, lost fringe benefits, mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation and loss of enjoyment of life, and other lost monetary and non-monetary benefits due to her.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. For an award of economic damages in an amount sufficient to make Plaintiff whole for past and future lost income and benefits and other economic losses suffered by Plaintiff resulting from Defendant's conduct;

B. For an award of compensatory damages for mental anguish, emotional distress, pain and suffering, humiliation, inconvenience, harm to reputation, loss of enjoyment of life and other losses incurred by Plaintiff as a result of Defendant's conduct;

C. To be reinstated into her GS-11 position, with all step and pay increases, promotions, and monetary benefits;

D. For an award of front pay, including lost wages and benefits.

E. For an award of attorneys' fees and related expenses;

F. For an award of prejudgment and post-judgment interest;

G. For an award of Plaintiff's costs of suit incurred herein; and,

H. For an award of such other relief as the Court may deem just and proper.

**REQUEST FOR JURY TRIAL**

109. Plaintiff demands a jury trial on all claims and issues set forth herein.


1 | DATED this 25th day of August 2021.

CHAHBAZI LAW PLLC

By /s/  Meenoo Chahbazi

Meenoo Chahbazi
Attorney for the Plaintiff Mary Campbell